**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MOUNTAIN DUDES,

    Plaintiff - Appellant,

v.

No. 18-4049

SPLIT ROCK HOLDINGS, INC., a Utah
corporation; SPLIT ROCK HOLDINGS,
LLC; OLD SPI, INC.; SPLIT ROCK FINE
HOMES; SPLIT ROCK FINE HOMES
REAL ESTATE COMPANY; SPLIT
ROCK AT ENTRADA REAL ESTATE
COMPANY; LANDEA REALTY; SPLIT
ROCK CONSTRUCTION; 4-B
BUILDERS; SPLIT ROCK
DEVELOPMENT; SPLIT ROCK
DEVELOPMENT GROUP; SPLIT ROCK
DESIGN; SPLIT ROCK INTERIOR;
JOSEPH L. PLATT; KENT L. BYLUND;
BARTLEY W. SMITH; REN G. BOYCE;
PATRICK MANNING; JOSEPH L. AND
SUSAN A. PLATT FAMILY
PROTECTION LIMITED
PARTNERSHIP; BYLUND FAMILY
LIMITED PARTNERSHIP; BARTLEY
SMITH FAMILY LIMITED
PARTNERSHIP; REN BOYCE FAMILY
LIMITED PARTNERSHIP; STONE
PUMA, INC.; MOUNTAIN MEADOW
FARMS, INC.; PATRICK MANNING,
LLC,

    Defendants - Appellees,

and

WELDON LARSEN,

    Defendant.

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:13-CV-00510-CW)**
_____

Brennan H. Moss (John P. Mertens, with him on the briefs), Pia Anderson Moss Hoyt, LLC, Salt Lake City, Utah, for Plaintiff-Appellant.

Joseph E. Wrona (Jared C. Bowman, with him on the brief), Wrona DuBois, PLLC, Park City, Utah, for Defendants-Appellees.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Substantively, this appeal addresses claims under Utah's Uniform Fraudulent Transfer Act ("UFTA"). But our resolution of this appeal turns primarily on a procedural matter involving how the sufficiency of evidence presented at a civil jury trial can be challenged. Rule 50, Fed. R. Civ. P., provides a carefully detailed process by which a party challenging the sufficiency of his opponent's evidence must give his opponent notice of that challenge and an opportunity to correct, if possible, any evidentiary deficiency before the case is submitted to the jury. Here, the district court deprived Plaintiff Mountain Dudes LLC of that opportunity. Instead, <u>after</u> the jury was unable to reach a verdict on Mountain Dudes' UFTA claims, the district court invoked Rule 50(b) to grant Defendants judgment as a matter of law on grounds

2

the court raised sua sponte after the jury deadlocked. That was error. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore REVERSE the judgment the district court entered sua sponte in Defendants' favor. However, we AFFIRM the district court's other rulings rejecting the grounds the various parties did raise seeking judgment as a matter of law. Finally, we REMAND this case for a new trial.[1]

## I. BACKGROUND

This appeal concerns Mountain Dude's claims asserted under Utah's Fraudulent Transfer Act ("UFTA"), Utah Code §§ 25-6-1 to 25-6-14.[2] The "UFTA's apparent purpose is to prevent insolvent debtors from transferring all of their assets to avoid their creditors' claims, and to provide a means whereby creditors can collect against a fraudulently transferred asset." Porenta v. Porenta, 416 P.3d 487, 492 (Utah 2017).

Here, Mountain Dudes is the creditor and Split Rock, Inc. ("SRI") is the debtor.[3] Mountain Dudes obtained a $1.175 million judgment against SRI as the result of a dispute over a home that Mountain Dudes purchased from SRI.

---

[1] We GRANT both Mountain Dudes' request to file a supplemental appellate appendix and Defendants' motion to file a corrected brief.

[2] In 2017, the Utah legislature amended and renumbered the UFTA's provisions and renamed the UFTA the Uniform Voidable Transactions Act. See Utah Code §§ 25-6-101 through 25-6-502. But, because these amended and renumbered provisions apply only to transactions occurring after May 9, 2017, see id. § 25-6-406(1), (2), they do not apply here. See Porenta v. Porenta, 416 P.3d 487, 490 n.1 (Utah 2017). We, therefore, apply the former UFTA.

[3] During the course of events at issue here, SRI changed its name to Old SPI, Inc., and is designated as a Defendant under that name. The parties and the district court,

3

At the same time that dispute between Mountain Dudes and SRI was ongoing, SRI, a land developer in St. George, Utah, went over $50 million in debt during the 2008 Great Recession. On June 24, 2009, SRI transferred all its remaining assets to a newly formed business, Split Rock Holdings, LLC ("SR Holdings").[4]

Although the June 2009 transaction occurred between two business entities—SRI and SR Holdings—many of the same individuals were involved on both sides of that deal. At that time, SRI was operated by five equal "partners," individual Defendants Joseph L. Platt, Kent L. Bylund, Bartley W. Smith, Ren G. Boyce, and Weldon Larsen.[5] SR Holdings was formed in June 2009 by four of the same individuals—Platt, Bylund, Smith, and Boyce. Defendant Patrick Manning testified that he was also involved in the June 2009 transaction and soon thereafter joined SR Holdings.

Through this June 2009 transaction, SRI sold to SR Holdings both SRI's name and goodwill, as well as deed restrictions on approximately 180 lots located in the Entrada subdivision in St. George. These deed restrictions obligated the lot owner to use SRI for any construction on the lot. In return for these assets, SR Holdings

---

however, continued to refer to this business entity as SRI. For consistency, we do the same.

[4] Initially unsure of its business form, Mountain Dudes designated this defendant as Split Rock Holdings, Split Rock Holdings, Inc. and Split Rock Holdings, LLC. Split Rock Holdings, LLC appears to be the most accurate reference to this defendant.

[5] The district court granted Larsen summary judgment and dismissed him from the case before trial. Mountain Dudes does not challenge that ruling on appeal.

agreed to pay SRI $2.7 million plus interest over a five-year period of time. It further agreed to execute a promissory note on June 24, 2009, setting forth those payment obligations. While all the other documents required for that transaction—the Sale of Assets Agreement and the assignments of SRI's name and deed restrictions to SR Holdings—were executed on June 24, 2009, the parties disputed at trial whether SR Holdings ever executed the $2.7 million promissory note in SRI's favor.

Mountain Dudes, as SRI's creditor, had hoped to levy the periodic payments that SR Holdings agreed to make to SRI on the $2.7 million obligation. Before any such payments were due, however, SRI and SR Holdings, in January 2010, modified the original Sale of Asset Agreement ("January 2010 Modification"), explaining that the parties had been mistaken about the value of the assets SRI transferred to SR Holdings. Instead of $2.7 million plus interest over five years, the January 2010 Modification required SR Holdings to pay SRI 8% of all net revenue SR Holdings earned over the next five years for construction on properties subject to the deed restrictions, but in no event to pay SRI less than $135,000. The January 2010 Modification provided for a new note and further stated that "[a]ny previous Note is hereby cancelled." (Aplt. App. 114-15.)

Ultimately, SR Holdings paid SRI a total of $188,000 under the January 2010 Modification's terms. Over approximately the same time period, SR Holdings disbursed $1.1 million to three of the individual Defendants—Platt, Bylund and Manning. Two other individual Defendants, Boyce and Smith, left SR Holdings a month or two after the June 2009 Sale of Assets Agreement and used the Split Rock

5

name to create Defendant Split Rock Construction, which earned money constructing homes on the deed-restricted lots.[6]

Its hopes having been stymied of levying part of the $2.7 million plus interest that SR Holdings had originally agreed to pay SRI, Mountain Dudes brought this UFTA action in federal court, invoking diversity jurisdiction. See 28 U.S.C. § 1332(a). In support of its UFTA claims, Mountain Dudes alleged that SRI had transferred an asset—the $2.7 million obligation SR Holdings originally owed SRI— beyond the reach of SRI's creditors by agreeing to the January 2010 Modification, which greatly decreased the amount and certainty of what SR Holdings would pay SRI for its name, goodwill, and deed restrictions. See Utah Code § 25-6-2(2), (12) (2015) (defining "asset" and "transfer"). Invoking three separate UFTA provisions, Mountain Dudes further alleged that this transfer was fraudulent because SRI made it with the actual intent to hinder, delay, or defraud its creditors, or SRI made the transfer without receiving equivalent value at a time when SRI had incurred, or believed it would incur, debts beyond its ability to pay, or SRI made the transfer

_____

[6] Most of the distributions SR Holdings made to the individual Defendants, as well as other money earned by these individual Defendants, was paid to personal companies or family partnerships through which these individuals each conducted their finances. Mountain Dudes also named those personal companies and family partnerships as Defendants in this action. Those Defendants included the Joseph L. and Susan A. Platt Family Protection Limited Partnership, Bylund Family Limited Partnership, Bartley Smith Family Limited Partnership, Ren Boyce Family Limited Partnership, Stone Puma, Inc., Mountain Meadow Farms, Inc., and Patrick Manning, LLC. Mountain Dudes alleged, among other things, that these personal business entities were the alter egos of the individual Defendants. Ultimately Mountain Dudes submitted to the jury alter ego claims against only three of these Defendants—Stone Puma, Mountain Meadow Farms, and Patrick Manning, LLC.

6

without receiving equivalent value at a time when it was insolvent or it became insolvent as a result of the transfer. See id. §§ 25-6-5(1)(a), 25-6-5(1)(b)(ii), 25-6-6(1) (2015). For relief, Mountain Dudes sought, among other things, to have the fraudulent transfer—the January 2010 Modification—voided, so that Mountain Dudes could then enforce the original $2.7 million obligation SR Holdings owed SRI and levy the payments SR Holdings made on that obligation. See id. § 25-6-8(1)(a) (2015). In this way, Mountain Dudes intended to levy some of the payments SR Holdings was obligated to make to SRI under the original Sale of Asset Agreement in order to recover the $1.175 million judgment SRI still owes Mountain Dudes. See id. § 25-6-8(1)(b) (2015). Mountain Dudes also sought to recover the proceeds of the alleged fraudulent January 2010 transfer from subsequent transferees, including the individual Defendants and the personal business entities they used to receive some of those proceeds. See id. §§ 25-6-8(2), 25-6-9(2), (3) (2015). The parties agreed prior to trial that Mountain Dudes had to prove its UFTA claims by clear and convincing evidence.

The parties tried Mountain Dudes' UFTA claims to a jury, which deadlocked. Before discharging the deadlocked jury, the district court, with the parties' consent, asked the jurors to indicate on the special verdict form any question on which jurors had reached unanimous agreement. Doing so, jurors indicated that they had unanimously rejected Defendants' defense that the original June 2009 Sale of Assets Agreement was "void" because it was based on SRI's and SR Holdings' "mutual mistake" as to the enforceability of the deed restrictions and the overall value of the

7

assets SRI transferred to SR Holdings. There was evidence presented at trial that, after SRI and SR Holdings executed the June 2009 Sale of Assets Agreement, SR Holdings decided not to try to enforce the deed restrictions after realizing there were significant obstacles in doing so. Jurors found that, while SRI and SR Holdings were mistaken as to the enforceability of the deed restrictions and the overall value of the assets SRI transferred, SR Holdings had borne the risk of those mistakes.

Jurors further indicated that they had unanimously found that SRI, in agreeing to the January 2010 Modification, both acted for the "purpose" of "delaying" its creditors and did so when it was insolvent. (Aple. Supp. App. 976-78.) But jurors could <u>not</u> agree as to whether the January 2010 Modification was a "transfer" of an asset, defined as "every mode of disposing of or parting with an asset," including a "release from a money claim" (<u>id.</u> 951 (Instruction 19-A)). <u>See</u> Utah Code § 25-6-2(2), (12) (2015) (defining "asset" and "transfer"). Thus, jurors found that, <u>if</u> the January 2010 Modification was the transfer of an asset for purposes of the UFTA, it was a fraudulent transfer. But because jurors could not decide if the January 2010 Modification was the "transfer" of an asset, jurors were unable to decide the UFTA claims.

During the trial, both sides made Fed. R. Civ. P. 50(a) motions for judgment as a matter of law, challenging the sufficiency of the other side's evidence. The district court reserved ruling upon those Rule 50(a) motions until the trial's conclusion. After discharging the deadlocked jury, the district court denied most of those Rule 50(a) motions without prejudice to the parties reasserting those motions under Rule

8

50(b).[7]  After the parties filed post-trial Rule 50(b) motions, the district court denied

Mountain Dudes' motion and granted the remaining Defendants judgment as a matter

of law.  On appeal, Mountain Dudes challenges both of those Rule 50(b) decisions.[8]

## II. FEDERAL RULE OF CIVIL PROCEDURE 50

Rule 50 of the Federal Rules of Civil Procedure provides the process for

challenging the sufficiency of the evidence in a civil jury trial.  See Unitherm Food

Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399 (2006).  Rule 50 provides:

---

[7] Mountain Dudes sued several business entities, formed by the individual Defendants after the June 2009 Sale of Assets Agreement, that use the Split Rock name, arguing these later formed Split Rock entities were liable to Mountain Dudes as successors to SRI.  These Defendants included SR Holdings, as well as Split Rock Design, Split Rock Interior, 4-B Builders, which also does business as Split Rock Fine Homes, Landea Realty, which also does business as Split Rock at Entrada Real Estate Company, Split Rock Fine Homes Real Estate Company, Split Rock Development, and Split Rock Development Group.  The district court granted these Defendants' Rule 50(a) motion, ruling that, "[w]ith the exception of Split Rock Holdings, LLC, . . . insufficient evidence had been presented to establish a successor liability claim against the Split Rock Defendants."  (Aplt. App. 171.)  Mountain Dudes does not challenge that ruling on appeal.  The jury deadlocked on the remaining successor liability claim against SR Holdings.

[8] Mountain Dudes also asserted an equitable unjust enrichment claim, which the parties agreed to try to the jury.  Jurors deadlocked on that claim as well.  The district court later granted Defendants Rule 50(b) judgment as a matter of law on that claim, but Mountain Dudes does not challenge that decision on appeal.  Lastly, the jury also deadlocked on Mountain Dudes' alter ego claims, and Mountain Dudes then moved for Rule 50(b) relief on those claims, too.  In denying that Rule 50(b) motion, the district court held that Mountain Dudes had failed to preserve that argument at trial but that, in any event, those claims were moot after the court held as a matter of law that SRI was not liable to Mountain Dudes under the UFTA.  Mountain Dudes does not directly challenge either of those alternative rulings on appeal.

9

**(a) Judgment as a Matter of Law.**

   **(1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

      **(A)** resolve the issue against the party; and

      **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

   **(2)** *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

   **(1)** allow judgment on the verdict, if the jury returned a verdict;

   **(2)** order a new trial; or

   **(3)** direct the entry of judgment as a matter of law.

**(c) Granting the Renewed Motion; Conditional Ruling on a Motion for a New Trial.**

   **(1)** *In General.* If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed.

The court must state the grounds for conditionally granting or denying the motion for a new trial.

**(2)** *Effect of a Conditional Ruling.* Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.

**(d) Time for a Losing Party's New-Trial Motion.** Any motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 28 days after the entry of the judgment.

**(e) Denying the Motion for Judgment as a Matter of Law; Reversal on Appeal.** If the court denies the motion for judgment as a matter of law, the prevailing party may, as appellee, assert grounds entitling it to a new trial should the appellate court conclude that the trial court erred in denying the motion. If the appellate court reverses the judgment, it may order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment.

(Emphasis added.)

This court reviews the district court's Rule 50(b) rulings de novo. See Bill Barrett Corp. v. YMC Royalty Co., 918 F.3d 760, 766 (10th Cir. 2019) (per curiam). Judgment as a matter of law under Rule 50 "is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." In re: Cox Enters., Inc., 871 F.3d 1093, 1096 (10th Cir. 2017) (internal quotation marks omitted).

Here, we treat the parties' Rule 50(b) cross motions for judgment as a matter of law as "two individual motions . . . , with each motion viewed in the light most favorable to its nonmoving party." Banner Bank v. First Am. Title Ins. Co., 916 F.3d

1323, 1326 (10th Cir. 2019) (addressing cross-motions for summary judgment under Fed. R. Civ. P. 56); see In re: Cox Enters., 871 F.3d at 1096 (noting "standard of review for Rule 50 motions mirrors the standard for summary-judgment motions" (internal quotation marks omitted)). "All reasonable inferences are drawn in favor of the nonmoving party and this court does not make credibility determinations or weigh the evidence." Liberty Mut. Fire Ins. Co. v. Woolman, 913 F.3d 977, 983 (10th Cir. 2019) (internal quotation marks omitted).

"Judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable [people] could not arrive at a contrary verdict." Bill Barrett Corp., 918 F.3d at 766 (internal quotation marks omitted).

### III. ANALYSIS

Mountain Dudes challenges both the district court's decision to grant Defendants judgment as a matter of law under Rule 50(b), and the court's decision to deny Mountain Dudes judgment as a matter of law. The district court invoked Rule 50(b) to grant Defendants judgment as a matter of law on grounds neither party had raised, but instead on grounds that the court raised sua sponte after the jury's deliberations. That was error.[9] See Hewlett-Packard Co. v. Mustek Sys., Inc., 340 F.3d 1314, 1318, 1321-22 (Fed. Cir. 2003) (holding it was error for district court to grant judgment as

---

[9] Mountain Dudes objected to this error in the district court and continues to object to it on appeal.

a matter of law on ground not raised in Rule 50(b) motion).  As we explain, district courts are limited by Rule 50 to granting judgment as a matter of law only on grounds raised by the parties and, when deciding Rule 50(b) motions, district courts are generally further limited to granting judgment as a matter of law only on grounds a party previously raised in a Rule 50(a) motion.

We further conclude that neither Defendants nor Mountain Dudes are entitled to judgment as a matter of law on the grounds they raised, because there remain genuinely disputed factual issues that a jury must resolve.[10]  In light of that, we remand this case for a new trial.

## A. The district court erred procedurally in granting Defendants judgment as a matter of law under Rule 50(b) on grounds the district court raised sua sponte after the jury's deliberations

### 1. The district court cannot grant Defendants judgment as a matter of law on grounds Defendants did not raise in either their Rule 50(a) or 50(b) motions

Rule 50 sets forth a carefully detailed two-step procedure for challenging the sufficiency of the evidence in a civil jury trial.  See Unitherm, 546 U.S. at 399.  This procedure imposes certain obligations on a party challenging the sufficiency of his opponent's evidence.

Rule 50(a)(2) requires a party to make a motion challenging the sufficiency of the evidence prior to the case being submitted to the jury.  See Unitherm, 546 U.S. at

---

[10] The same attorney represented all Defendants at trial and generally made trial and post-trial motions for all of them collectively.  In light of that, we refer to Defendants collectively here.

399-400. The purpose of this requirement "is to alert the opposing party (and the court) of any deficiencies in the case, thereby giving the party the opportunity to rectify any deficiencies prior to the case being submitted to the jury." Miller v. Eby Realty Grp., LLC, 396 F.3d 1105, 1114 (10th Cir. 2005) (internal quotation marks omitted); see also 9B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2533 (3d ed. Apr. 2019) (stating that the requirement of a Rule 50(a) motion before the case is submitted to the jury "is to apprise the trial court of the moving party's position to see if any defects can be corrected before the jury retires"). To facilitate this pre-deliberation notice of a deficiency in the evidence, Rule 50(a)(2) requires the moving party to "specify the judgment sought and the law and facts that entitle the movant to the judgment."

A party can renew its motion for judgment as a matter of law under Rule 50(b) after the jury returns a verdict or, as in this case, after the jury is discharged without reaching a verdict. A Rule 50(b) movant, however, can only reassert the same grounds for judgment as a matter of law that he first asserted in his pre-deliberation Rule 50(a) motion. See Perez v. El Tequila, LLC, 847 F.3d 1247, 1255 (10th Cir. 2017) ("Arguments presented in a Rule 50(b) motion cannot be considered if not initially asserted in a Rule 50(a) motion."); see also Advanced Recovery Sys. v. Am. Agencies, 923 F.3d 819, 825 (10th Cir. 2019).

Compliance with Rule 50 is "mandatory." Home Loan Inv. Co. v. St. Paul Mercury Ins. Co., 827 F.3d 1256, 1265 (10th Cir. 2016) (citing Unitherm, 546 U.S at 404). In order to preserve for appeal an argument challenging the sufficiency of the

14

evidence, the movant <u>must</u> raise the same argument in both a Rule 50(a) and a Rule 50(b) motion.  <u>See</u> <u>Unitherm</u>, 546 U.S. at 396, 399-402; <u>see also</u> <u>Home Loan Inv.</u>, 827 F.3d at 1265-66.  Otherwise, an appellate court is "without power" to grant relief under Rule 50.  <u>Unitherm</u>, 546 U.S at 400-01 (internal quotation marks omitted; citing earlier Supreme Court cases); <u>see also</u> <u>id.</u> at 396, 399-402 (holding that, because appellant filed a Rule 50(a) motion, but not a Rule 50(b) motion, appellate court could not reverse jury's verdict for lack of evidence); <u>Home Loan Inv.</u>, 827 F.3d at 1269.

Here, while Defendants made both a Rule 50(a) and (b) motion, they never raised the grounds on which the district court later granted them judgment as a matter of law.  It was the trial court, instead, that sua sponte identified those grounds and it did so after the jury's deliberations.  That was error, because the district court deprived Mountain Dudes of the notice and opportunity to correct an evidentiary deficiency that Rule 50's carefully detailed and mandatory two-part procedure seeks to provide.  <u>See</u> <u>Hewlett-Packard</u>, 340 F.3d at 1318, 1321-22 (Fed. Cir.) (holding it was error for district court to grant judgment as a matter of law on ground not raised in Rule 50(b) motion); <u>see also</u> <u>Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.</u>, 762 F.3d 829, 844 n.13 (9th Cir. 2014) (noting, after rejecting merits of district court's alternative grounds for granting judgment as a matter of law under Rule 50(b)(3), that "it does not appear that the district court, in any event, had authority to grant . . . Rule 50(b)(3) relief on these alternate grounds because [the Rule 50

movant] did not raise them in either his pre-verdict Rule 50(a) or his post-verdict Rule 50(b)(3) motion").

### 2. The grounds on which the district court granted Defendants judgment as a matter of law were clearly different from the grounds on which Defendants themselves sought judgment as a matter of law

We have, on occasion, been lenient in not requiring a moving party to reassert his Rule 50(a) arguments in his Rule 50(b) motion with precision. See, e.g., Perez, 847 F.3d at 1256 (stating that "technical precision is unnecessary" (internal quotation marks omitted)). But the grounds on which the district court here granted Defendants judgment as a matter of law were completely different from the arguments challenging the sufficiency of Mountain Dudes' evidence that Defendants themselves asserted in their Rule 50(a) and (b) motions.

In their written mid-trial Rule 50(a) motion addressing the UFTA claims, Defendants argued only that, because any fraudulent transfer claim must be directed at the actual transferee receiving the debtor's asset, which in this case was SR Holdings, "the fraudulent transfer claims should be dismissed as a matter of law against all Defendants other than Split Rock Holdings, LLC." (Aplt. App. 158 (emphasis added).) Defendants reiterated only that argument as to the UFTA claims during oral argument before the district court on the parties' Rule 50(a) motions.

After the district court discharged the jury, Defendants reasserted that same argument in their Rule 50(b) motion, arguing that the only Defendant that could be liable for any fraudulent transfer under the January 2010 Modification was SR Holdings. In addition, Defendants improperly attempted to assert new grounds for

16

judgment as a matter of law in their Rule 50(b) motion, arguing that Mountain Dudes failed to provide sufficient evidence for a jury to find, by clear and convincing evidence, that SRI, through the January 2010 Modification, "transferred" to SR Holdings—that is, "dispos[ed] of or part[ed] with an asset or an interest in an asset . . ." (Aplt. App. 951 (Instruction 19-A))—SRI's right under the original Sale of Asset Agreement to receive $2.7 million plus interest. In support of that argument, Defendants argued only that the January 2010 Modification did not sufficiently diminish the amount SR Holdings was to pay SRI for its assets to be deemed a transfer because SRI might have earned more money (over $3 million) under the January 2010 Modification than it would have under the original June 2009 Sale of Assets Agreement ($2.7 million plus interest), had SR Holdings been able to enforce all of the deed restrictions.

The district court instead granted Defendants judgment as a matter of law for two quite different alternative reasons. First, the district court ruled that Mountain Dudes failed to provide sufficient evidence for a jury to find, by clear and convincing evidence, that SRI acquired any asset from the initial June 2009 Sale of Assets Agreement (which SRI could then have "transferred" back to SR Holdings under the January 2010 Modification), because a) Mountain Dudes failed to provide sufficient evidence that SR Holdings ever executed and delivered to SRI the $2.7 million promissory note required by the June 2009 Sale of Asset Agreement and b) that, without the executed promissory note, SRI never acquired any enforceable rights under the Sale of Assets Agreement. Thus, while Defendants' Rule 50(b) motion

17

addressed the second part of the alleged transfer (arguing there was no evidence that SRI would have received less under the January 2010 Modification than it would have under the original June 2009 Sale of Assets Agreement), the district court addressed the first part of the alleged transfer (ruling there was never an enforceable Sale of Assets Agreement in June 2009 requiring SR Holdings to pay SRI $2.7 million, plus interest). Thus, the district court granted Defendants judgment as a matter of law on a ground they had never raised.

The district court's decision to grant Defendants judgment as a matter of law on this previously unraised ground deprived Mountain Dudes of notice and an opportunity to cure any deficiency in its evidence before the case was submitted to the jury. The district court did mention, midtrial, that Mountain Dudes had failed to produce any signed promissory note, but the court did so expressly only in an effort to understand Mountain Dudes' theory of the case. Neither the court nor Defendants raised the lack of a signed promissory note as a basis for Rule 50(a) judgment as a matter of law prior to the jury's deliberations. Furthermore, in their opposition to Mountain Dudes' post-deliberation Rule 50(b) motion, Defendants argued, contrary to the district court's ultimate determination, that there was a disputed issue of fact for the jury as to whether the original June 2009 Sale of Assets Agreement had ever been completed.[11]

---

[11] Because the district court erred procedurally in relying on this previously unraised ground to grant Defendants judgment as a matter of law, we need not address the merits of that determination. Still, we are skeptical. It appears there was circumstantial evidence from which a reasonable jury could find, by clear and

Second, the district court ruled that, even if the June 2009 Sale of Assets

Agreement was enforceable, Mountain Dudes was entitled to judgment as a matter of

law on an alternative ground, based on a case none of the parties cited, Rupp v.

Moffo, 358 P.3d 1060 (Utah 2015).  Rupp addressed a statutory provision of the

UFTA that is not at issue here, Utah Code § 25-6-2(2)(a), which defines an "asset" to

---

convincing evidence, that SR Holdings did execute a $2.7 million promissory note in SRI's favor as part of the June 2009 Sale of Assets Agreement, even though Mountain Dudes failed to produce a signed copy of that note at trial.  That evidence indicated, for example, that the June 2009 Sale of Asset Agreement required SR Holdings to execute the $2.7 million promissory note on June 24, 2009, the same day that all of the other documents necessary for that transaction were executed and, after June 24, 2009, the parties took actions required under the Sale of Assets Agreement as if it had been completed.  In addition, the later January 2010 Modification, executed by the same parties, cancelled "[a]ny previous Note."  (Aplt. App. 1114-15.)  Moreover, there was some testimony from several individual Defendants that at least suggested that SR Holdings might have executed the $2.7 million note.  It appears, therefore, that there was sufficient circumstantial evidence from which a jury could reasonably infer that SR Holdings executed the $2.7 million promissory note in June 2009.  In rejecting that possibility in its Rule 50(b) ruling, the district court erred in weighing the credibility of Defendant Platt's testimony.  (Aplt. App. 239 (stating Platt admitted to not being the most reliable witness and had not always been candid with the court in the past, sometimes let his ego get the best of him when making decisions, and had sometimes had difficulty keeping track of things because of his age).)  See Liberty Mut. Fire Ins., 913 F.3d at 983.  Furthermore, even if there was insufficient evidence for a reasonable jury to find that SR Holdings executed a $2.7 million promissory note in SRI's favor in June 2009, it is undisputed that SR Holdings executed the June 2009 Sale of Assets Agreement which itself required SR Holdings to pay SRI $2.7 million plus interest over five years for the purchase of SRI's name, goodwill, and deed restrictions.  The district court incorrectly held that an executed promissory note was required as "consideration" before the Sale of Assets Agreement became enforceable.  (Aplt. App. 237-38.)  Although consideration is necessary to create an enforceable contract, usually "consideration" can be the promise to do something, rather than the actual performance of that promise.  See Coulter & Smith, Ltd. v. Russell, 966 P.2d 852, 859 (Utah 1998) ("It is not necessary for the promisor to render performance in order for us to find consideration; the reciprocal promise is sufficient consideration to form a contract.").

19

"mean[] property of a debtor, but does not include . . . property to the extent it is encumbered by a valid lien . . . ." (Renumbered in 2017 to § 25-6-102(2).) Rupp involved a debtor who let his sister-in-law live in the debtor's "investment" property rent free for eight years, including during a time period when the debtor was in default on the mortgage payments due on the property. 358 P.3d at 1061. The mortgagee had a lien on the property and the rents derived from this investment property. Id. Another of the debtor's creditors brought a claim under the UFTA seeking to recover eight years of rent from the sister-in-law, arguing that the debtor's allowing her to live in the house rent free after the debtor was in default on the mortgage payments amounted to a fraudulent transfer of an asset of the debtor. Id. Applying the "plain language" of § 25-6-2(2)(a), the Utah Supreme Court held that the rent at issue there, which was included in the mortgagee's lien, was not an asset of the debtor's for purposes of the UFTA. Id. at 1063-64. In reaching that conclusion, Rupp explained that the UFTA

> provides a remedy for creditors who are actually harmed when a debtor transfers property; it does not provide a remedy in cases of only theoretical harm. For example, the Act is applicable when a debtor is insolvent because a solvent debtor who transfers property does not harm creditors. Similarly, the Act applies to transfers where the debtor does not receive reasonably equivalent value in return. In cases where the debtor does receive reasonably equivalent value, the transfer puts one asset beyond the reach of the creditors, but replaces the asset with one of equivalent value, thus avoiding any harm to creditors.
>
> The same reasoning applies in the context of property that is fully encumbered by a valid lien. When such property is transferred, there is no harm done to either the creditor holding the lien—the secured creditor—or any other unsecured creditor of the debtor. The secured creditor is not harmed because it retains the right to proceed against the

20

property by foreclosing its lien—regardless of whether the debtor currently holds the encumbered property. And any unsecured creditors are not harmed because they would never have been able to recover their debt by means of the encumbered property. Thus, excluding property to the extent that it is encumbered by a valid lien is consistent with the Act's general no-harm-no-foul operation.

Id. at 1064-65 (footnotes containing statutory cites omitted).

Relying on Rupp, the district court in this case ruled that Mountain Dudes had to prove, not only that SRI fraudulently transferred beyond its creditors' reach an unsecured asset—the $2.7 million plus interest that SR Holdings owed SRI after the June 2009 Sale of Assets Agreement—but also that unsecured creditor Mountain Dudes had been harmed by that fraudulent transfer. The district court went on to conclude that, because Mountain Dudes failed to present evidence of its additional harm, Defendants were entitled to Rule 50(b) judgment as a matter of law.

But it is no wonder that Mountain Dudes failed to present evidence of its additional harm. The UFTA generally provides that a creditor who is able to prove that a debtor fraudulently transferred an unsecured asset beyond the reach of its creditors can avoid that transfer and then seek to collect the debt owed from that asset. See generally Utah Code §§ 25-6-8, 25-6-9 (2015). In light of that, the district court did not instruct jurors on this additional harm, beyond the fraudulent transfer itself of an asset. Neither Defendants nor Mountain Dudes ever request such an instruction. It is, thus, not surprising that Mountain Dudes did not offer any evidence of its actual harm, beyond the fraudulent transfer; Mountain Dudes did not know it had to do so. This is exactly the "ambush" Rule 50's careful and detailed process

21

seeks to avoid by requiring that a moving party challenge the sufficiency of the evidence <u>before</u> the jury's deliberations in order to give the non-moving party notice and an opportunity to cure any defect in that party's evidence. See <u>Puga v. RCX Solutions, Inc.</u>, 922 F.3d 285, 290 (5th Cir. 2019). It was particularly egregious, then, for the district court to identify this previously unraised ground for granting Defendants judgment as a matter of law <u>after</u> the jury's deliberations and after the trial had concluded.

It is true that after the district court identified the previously uncited <u>Rupp</u> decision during oral argument on the parties' post-trial Rule 50(b) motions, the court gave the parties an opportunity to file supplemental briefs addressing that case. But by then it was too late for Mountain Dudes to address any evidentiary deficiency in its case. Moreover, although the district court never explained what evidence of "actual harm"—beyond proof that SRI transferred an asset beyond the reach of its creditors—was necessary, Defendants addressed that question in their supplemental post-trial <u>Rupp</u> brief. There, Defendants asserted that, even if Defendants transferred an asset beyond the reach of SRI's creditors, Mountain Dudes had to provide further evidence that it would have actually been able to collect from the transferred asset the $1.175 million judgment that SRI owed Mountain Dudes, despite the fact that SRI owed $50 million to many other creditors.[12] Such evidence was different from

---

[12] It might be relevant to a jury considering this question that during approximately this same time period, SR Holdings disbursed $1.1 million to other clearly related individual Defendants.

the evidence Mountain Dudes produced to meet the elements of its UFTA claims on which the district court instructed jurors.[13]

In conclusion, the district court's post-trial decision to grant Defendants judgment as a matter of law under Rule 50(b) on grounds Defendants never asserted in either their Rule 50(a) or 50(b) motions, was error because it deprived Mountain Dudes of the pre-deliberation notice and opportunity to rectify any deficiency in its evidence that Rule 50 was intended to provide. We, therefore, REVERSE the judgment the district court entered as a matter of law in Defendants' favor.

**B. Defendants are also not entitled to judgment as a matter of law on the ground they did raise in their Rule 50(b) motion**

We address just briefly the argument that Defendants raised for the first time in their Rule 50(b) motion—that Mountain Dudes failed to provide sufficient evidence for a jury to find that, through the January 2010 Modification, SRI "transferred" an "asset" because SRI might have earned more money (over $3 million) under the January 2010 Modification than SRI would have earned under June 2009 Sale of Assets Agreement ($2.7 million plus interest), had SR holdings

---

[13] Because we conclude the district court also erred procedurally in sua sponte granting Defendants judgment as a matter of law on this second ground, we need not address the merits of this particular district court's ruling. But we are, again, skeptical of the district court's substantive conclusion. Rupp addressed a UFTA provision that is not at issue here under circumstances that are not presented in this case. It is not obvious from the language of the statute that an unsecured creditor like Mountain Dudes would have to prove more than that the debtor fraudulently transferred an unsecured asset beyond its unsecured creditors' reach, before being able to obtain a remedy the UFTA provides. But we do not definitively need to address that question here.

been able to enforce all of the deed restrictions. Defendants reassert that argument in their appellate answer brief.

Again, Defendants did not make this argument in their pre-deliberation Rule 50(a) motion and, as we have previously explained, it is mandatory that a party first raise a ground for judgment as a matter of law in a Rule 50(a) motion. See Home Loan Inv., 829 F.3d at 1265 (citing Unitherm, 546 U.S. at 404). Nevertheless, this court has, on occasion, considered a challenge to the sufficiency of the evidence raised by a party for the first time in a Rule 50(b) post-deliberation motion where the non-moving party did not object to that belated argument. See Therrien v. Target Corp., 617 F.3d 1242, 1250 n.2 (10th Cir. 2010). That is the case here. Mountain Dudes did not object in the district court, nor does it object now on appeal, to Defendants raising this new argument for the first time in their Rule 50(b) motion. Mountain Dudes, therefore, has waived any objection to our considering the argument here.

Nevertheless, we conclude that Defendants are not entitled to judgment as a matter of law on the merits of this argument. SRI would have earned more money under the January 2010 Modification only if SR Holdings could have enforced the deed restrictions. But there was significant evidence presented at trial that the deed restrictions were either unenforceable or at the very least that it would have been quite difficult to enforce them. In fact, there was evidence that, in light of those difficulties, SRI/SR Holdings announced publicly in November 2009 that it would not even attempt to enforce those deed restrictions. These difficulties were the very

24

reason given by SRI and SR Holdings for the January 2010 Modification of the price SR Holdings would pay for the SRI assets it purchased. In light of this evidence, a reasonable jury could certainly have found, by clear and convincing evidence, that the January 2010 Modification significantly reduced the amount and certainty that SR Holdings would pay for SRI's assets. On that basis, a jury could have further found that the 2010 Modification of the payment terms was a "transfer" of an "asset"—that is, that SRI "dispos[ed] of or part[ed] with" (Aple. Supp. App. 951) its right to receive $2.7 million under the June 2009 Sale of Assets Agreement—for purposes of the UFTA. Defendants, therefore, were not entitled to a judgment as a matter of law on this basis.

## C. Disputed questions of material fact also preclude judgment as a matter of law for Mountain Dudes

In the district court, Mountain Dudes also moved for judgment as a matter of law on its UFTA claims and, in doing so, raised the same arguments in both its Rule 50(a) and 50(b) motions. In those motions, Mountain Dudes broadly argued that it had proven its UFTA claims as a matter of law. Mountain Dudes reiterates that argument on appeal. However, the district court did not err in denying Mountain Dudes' Rule 50 motions because Mountain Dudes failed to show that the evidence it presented in support of its UFTA claims "points but one way and is susceptible to no reasonable inferences which may support [Defendants'] position." In re: Cox Enters., 871 F.3d at 1096 (internal quotation marks omitted).

25

In particular, Mountain Dudes argues on appeal that it is entitled to judgment as a matter of law on its UFTA theory that the January 2010 Modification amounted to SRI transferring an asset—the $2.7 million plus interest that SR Holdings originally agreed to pay SRI—beyond the reach of its creditors <u>with the intent to delay its creditors</u>.  The deadlocked jury indicated that it unanimously found that SRI had acted with this intent to delay its creditors.[14]  But the jury further indicated that it was unable to decide whether the January 2010 Modification was a transfer of assets.  As discussed in detail above, the evidence regarding that question is disputed.  That factual dispute, therefore, precludes judgment as a matter of law for either party.

**D. Remedy**

Finally, we turn to the appropriate remedy.  Because the district court erred in granting Defendants judgment as a matter of law on grounds that none of the parties raised, we vacate that judgment.  <u>See, e.g.</u>, <u>Figueroa v. Mazza</u>, 825 F.3d 89, 98 (2d Cir. 2016) (vacating improperly granted Rule 50 judgment as a matter of law).  Furthermore, because none of the parties have raised grounds that entitle them to judgment as a matter of law, we do not enter judgment for any party on any ground the parties raised.  Therefore, judgment cannot be entered.

---

[14] In considering a motion for judgment as a matter of law, this court is not bound by the jury's finding.  <u>See</u> 9B Wright & Miller, <u>Federal Practice & Procedure</u>, § 2524 (Apr. 2019).  But no one challenges the sufficiency of the evidence to support that finding.

Where the district court errs in granting a party judgment as a matter of law, often the relief is to reinstate the jury's verdict.  See, e.g., Connelly v. Metro. Atlanta Rapid Transit Auth., 764 F.3d 1358, 1364 (11th Cir. 2014).  But here, because the jury deadlocked, we have no jury verdict to reinstate.[15]  We, therefore, remand this case for a new trial.  Defendants complain that Mountain Dudes never asked for a new trial.  Even so, it seems to us there is no other choice except to retry this case because judgment for any party is not warranted and there is no jury verdict that can be reinstated.

## IV. CONCLUSION

The district court erred in granting Defendants judgment as a matter of law under Rule 50(b) on grounds no party had ever raised, let alone properly raised.  In light of that error, we REVERSE judgment as a matter of law entered for Defendants. We further conclude that none of the arguments that Mountain Dudes and Defendants

---

[15] On appeal, Mountain Dudes asserts generally that the district court was required to "harmonize" the jury's partial verdict.  But the jury made insufficient findings in this case to permit that.  See generally Domann v. Vigil, 261 F.3d 980, 981-83 (10th Cir. 2001) ("The general rule adopted by federal courts addressing this question is that failure by a jury to answer some of the questions in a special verdict does not vitiate an otherwise unanimous verdict where the unanimous answers to the verdict conclusively dispose of the case." (internal quotation marks omitted; emphasis added)).  We further reject Mountain Dudes argument on appeal that, after jurors directly and specifically indicated on the special verdict form that they could not decide unanimously whether the January 2010 Modification was a "transfer," they nevertheless found that there was a "transfer" by answering affirmatively the question on the special verdict: was SRI "insolvent at the time of the Transfer or bec[a]me insolvent as a result of the Transfer" (Aple Supp. App. 976, 978).  We decline to give such a broad reading to the jury's special verdict form.

did assert in support of their respective Rule 50(b) motions warranted the entry of judgment as a matter of law for either side because there remain genuinely disputed issues of material fact that must be resolved by a jury. We, therefore, AFFIRM the district court's decision to deny Mountain Dudes' Rule 50(b) motion, and REMAND this case to the district court for a new trial.